**COMP**
PETER S. CHRISTIANSEN, ESQ.
Nevada Bar No.: 5254
EGLET WALL CHRISTIANSEN
400 Seventh Street, Suite 400, Box 1
Las Vegas, Nevada 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
*Attorneys for Natalie Nelson as legal guardian*
*of minor child Alexander L.*
-&-
MARC A. SAGGESE, ESQ.
Nevada Bar No. 7166
SAGGESE & ASSOCIATES, LTD.
732 S. Sixth Street, Suite 201
Las Vegas, Nevada 89101
Telephone: (702) 778-8883
Facsimile: (702) 778-8884
*Attorneys for all Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| NATALIE NELSON, individually and as natural mother and legal guardian of minor child Alexander L.; RICHARD E. NELSON, maternal grandfather of Alexander L.; CATHERINE R. NELSON, maternal grandmother of Alexander L.;<br><br>       Plaintiffs,<br><br>    vs.<br><br>MICHAEL WILLDEN, Director of the Nevada Department of Health and Human Services; AMBER HOWELL, Administrator of the Nevada Division of Child and Family Services; DONALD BURNETTE, Clark County Manager; CLARK COUNTY; LISA RUIZ-LEE, Director of Clark County Department of Family Services; DOES I-X, inclusive; DOES XI-XX, inclusive;<br><br>       Defendants. | CASE NO.: 2:13-cv-50-GMN-VCF<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

EGLET WALL
CHRISTIANSEN
Trial Attorneys

Come now Plaintiff, Natalie Nelson, as legal guardian of minor child Alexander L., by and through her attorneys, Peter S. Christiansen, Esq., of the law firm Eglet Wall Christiansen, and Marc A. Saggese, Esq.. of the law firm Saggese & Associates, LTD; and Plaintiffs Natalie Nelson, individually and as natural mother of Alexander L.; Richard E. Nelson, maternal grandfather of Alexander L.; Catherine R. Nelson, maternal grandmother of Alexander L., by and through their attorney, Marc A. Saggese, Esq.. of the law firm Saggese & Associates, LTD., and for their Amended Complaint against Defendants, complain and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil rights action arising under both state and federal law for damages brought by the natural mother, maternal grandmother, and maternal grandfather of two (2) year old Alexander L.; a boy who was severely physically abused and, as a result, sustained life-threatening and permanent injuries while in the legal custody of the State of Nevada, and/or Clark County, and placed in foster care. Plaintiff seeks redress for the harms suffered by Alexander L., while in Defendants' care and custody.

## DEMAND FOR JURY TRIAL

2.      Plaintiffs demand a jury trial in the instant action.

## JURISDICTION

### (Federal Causes of Action)

3.      The Federal causes of action are brought by Plaintiff Natalie Nelson pursuant to 42 USC § 1983 and 42 USC §671 to redress violations perpetrated by the Clark County Department of Family Services, the Nevada Department of Health and Human Services, the Nevada Division of Child and Family Services, Clark County, its case workers, employees and/or agents, while acting under color of state law, municipal law, custom or policy of

certain rights secured to Plaintiff by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court pursuant to 28 USC § 1331 and § 1343.

## JURISDICTION FOR THE STATE CAUSES OF ACTION

### (State Causes of Action)

4.      Jurisdiction for the State tort claims against all Defendants is conferred upon this Court by the doctrine of pendent jurisdiction pursuant to 28 USC § 1367.

## VENUE

5.      Venue is proper in the District of Nevada pursuant to 28 USC § 1391(b) as the events or omissions giving rise to the claims at issue arose in this district.

## PARTIES

6.      Plaintiff NATALIE NELSON, in her individual capacity, is the natural mother of minor child ALEXANDER L., and is a resident of the State of Nevada, County of Clark.

7.      Plaintiff NATALIE NELSON, in her capacity as representative for minor child ALEXANDER L., is the natural mother and legal guardian of minor child ALEXANDER L., who resides in the State of Nevada, County of Clark.

8.      Plaintiff RICHARD E. NELSON is the maternal grandfather of minor child ALEXANDER L., and is a resident of the State of Nevada, County of Clark.

9.      Plaintiff CATHERINE R. NELSON is the maternal grandmother of minor child ALEXANDER L., and is a resident of the State of Nevada, County of Clark.

10.      Defendant Michael Willden ("Defendant Willden") is and has been the Director of the Nevada Department of Health and Human Services ("Nevada DHHS") since July 2001. The Nevada DHHS consists of the Nevada Division of Child and Family Services

("State DCFS"). Nev. Rev. Stat. § 232.300. As Director of Nevada DHHS, Defendant Willden administers the State DCFS. Nev. Rev. Stat. § 232.320. Defendant Willden has a duty to appoint the Administrator of State DCFS. Nev. Rev. Stat. § 232.320. Nevada DCFS via the Division of Health Care Financing and Policy has a duty to administer Nevada's Medicaid and Children's Health Insurance Program. Nev. Rev. Stat. §§ 422.270, 422.271. Defendant Willden has a duty to administer federal funds and ensure county compliance with all federal mandates of the Medicaid program. Nev. Rev. Stat. § 232.070. Upon information and belief, attendant to that duty, Defendant Willden must establish and implement policies and procedures to ensure such compliance.

11.     Defendant Willden is sued in his individual capacity.

12.     Defendant Amber Howell ("Defendant Howell") is the current Administrator of State DCFS and has held that position since March 2012. Defendant Howell was responsible for the administration and oversight of all functions of State DCFS, including but not limited to the establishment and implementation of policies and procedures. State DCFS has duties and responsibilities to Alexander and other foster children. As one of the responsibilities, the Division must administer all federal funds provided to the State by the United States Department of Health and Human Services, as well as plan, coordinate, and monitor the delivery of child welfare services throughout the State. Nev. Rev. Stat. § 432B.180. State DCFS is required to promulgate regulations "establishing reasonable and uniform standards for child welfare services." Nev. Rev. State. § 432B.190. Under federal law, State DCFS must not "delegate[ing] to other than its own officials its authority for exercising administrative discretion in the administration or supervision of the plan including the issuance of policies, rules, and regulations on program matters." 45 C.F.R. §

205.100(b)(2). Thus, State DCFS must evaluate all child welfare services provided throughout the State and take corrective action against any agency providing child welfare services which is not complying with any applicable laws, regulations or policies, and direct policies and procedures for provision of the same. Nev. Rev. Stat. § 432B.180(8). Defendant Howell, as Administrator of State DCFS, was also responsible for administering any money granted to the State by the Federal Government with respect to children in the child welfare system. Nev. Stat. Rev. § 432B.180(1).

13.    Defendant Howell is sued in her individual capacity.

14.    Defendants Willden and Howell are referred to collectively as the "State Defendants."

15.    Defendant DONALD BURNETTE, (hereinafter "BURNETTE"), is the Clark County Manager. At all times relevant to this Complaint, BURNETTE was acting in his capacity as an agent, servant, and employee of Clark County. Upon information and belief, BURNETTE is responsible for the promulgation, implementation, and enforcement of the policies and procedures of Clark County, including managing the County's budget and providing administrative oversight for all County departments, and at all times herein mentioned, is and was a resident of the State of Nevada, County of Clark.

16.    Defendant BURNETTE is sued in both his individual and official capacities.

17.    Defendant CLARK COUNTY is a public entity established and maintained by the laws and Constitution of the State of Nevada. Defendant CLARK COUNTY operates and controls the Clark County Division of Family Services. Defendant CLARK COUNTY is also responsible for the training, hiring, control, and supervision of all its officers, caseworkers, supervisors, employees, and/or agents as well as the implementation and maintenance of

official and unofficial policies germane to the function of a public entity. At all times relevant to this Complaint, Defendant CLARK COUNTY controlled all caseworkers, officers, agents, and employees of the Clark County Division of Family Services.

18.     Defendant LISA RUIZ-LEE, (hereinafter "LEE"), is the Director of the Clark County Department of Family Services, (hereinafter "DFS"). At all times relevant to this Complaint, LEE was acting in her capacity as an agent, servant, and employee of Clark County. As Director, LEE is responsible for administering child welfare services and ensuring the safety and well-being of children who are in the custody of the State. Upon information and belief, LEE is responsible for the promulgation, implementation, and enforcement of the policies and procedures of DFS, and at all times herein mentioned is and was a resident of the State of Nevada, County of Clark.

19.     Defendant LEE is sued in both her individual and official capacities.

20.     Collectively, State and County Defendants are referred to as "Defendants."

21.     Defendant Does I-X, inclusive, are the individual employees, caseworkers, and agents for DFS and CLARK COUNTY  who were responsible for overseeing the safety, placement, and well-being of minor child ALEXANDER L., while in the custody of DFS. Plaintiffs will ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join said Defendants in these proceedings.

22.     Defendant Does XI-XX, inclusive, are supervisory and/or policy making officials of CLARK COUNTY and DFS as yet unidentified who have adopted, implemented, maintained or tolerated policies which permitted, facilitated, or allowed the violation of the civil rights of minor child ALEXANDER L., or who have negligently trained, hired or

supervised officers, agents or employees of DFS. Plaintiffs will ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join Defendants in these proceedings.

21.     At all times relevant to this Complaint, all of the actions of the Defendants were performed under color of state law and pursuant to their authority as agents, employees, and/or representatives of DHHS, NDCFS, CLARK COUNTY, and/or DFS.

22.     That at all times pertinent hereto, Defendants and each of them were the agents, servants, employers and/or employees of each other and were acting within the course and scope of said relationship.

## FACTS COMMON TO ALL CAUSES OF ACTIONS

23.     Upon information and belief, Defendants run a child welfare system that falls below compliance both with state and federal laws and/or professional standards. Nevada law charges the State Defendants with certain duties and grants authority to create and promulgate child welfare policy. However, these State Defendants have abandoned and/or failed in that duty.

24.     Upon information and belief, as of October 2004, as a result of AB 1 (2001), responsibility for foster care was transferred from State DCFS to Clark and Washoe counties. The State retained responsibility for supervision and oversight of Clark and Washoe counties' child protective services and foster care programs to ensure, among other things, compliance with federal and state laws, regulations, and standards. The transfer of foster care staff and services from the State to Clark County was completed in October 2004.

25.     Upon information and belief, when the State transferred child welfare services from the State to Clark and Washoe counties, the State still retained the duty to maintain and supervise the child welfare system Statewide.

26.     Upon information and belief, State Defendants' duty to provide training to Clark County child welfare workers is documented in the Intrastate Contract first entered into by State and County in 2005. This contract expressly provides that State Defendants are responsible for providing training and technical assistance to Clark County. However, State Defendants' failure to train caseworkers adequately led to the injuries suffered by Alexander as more fully plead herein.

27.     Upon information and belief, State Defendants have the duty and responsibility to take action, including providing supervision, oversight and guidance; instituting policies and procedures; training workers, and withholding funds for the failure of the County to comply with its own duties. The failure to take this action has caused the violations of Alexander's constitutional and statutory rights. State Defendants have failed to fulfill those duties thereby allowing those violations to continue unabated for years, increasing the number of foster children harmed and causing and/or exacerbating the harm suffered by Alexander.

28.     Upon information and belief, upon receipt of a report of child abuse, Clark County is obligated to promptly investigate the claim. Nev. Rev. Stat. § 432B.260. As part of that investigation, Clark County is required to determine the composition of the family, household, or facility including the name, sex, and age of any children in the report and their siblings, the person(s) responsible for their care, and any other adults living in the household. Nev. Rev. Stat. § 432B.300. Upon information and belief, Clark County is also required to determine whether there is reasonable cause to believe any child is being abused or neglected.

If there is a reasonable cause to believe a child is being abused or neglected, it is the County's duty to determine the immediate and long-term risks to the child if the child was to remain in the same environment and evaluate what treatment and services appear necessary to prevent the abuse or neglect. *Id.* If the County determines that the child is in need of further protection it may refer the case for criminal prosecution and/or take the child into protective custody. Nev. Rev. Stat. § 432B.380-390.

29.     On its website, Clark County Department of Family Services declares that its "role is to help keep children safe." Clark County Department of Family Services (DFS), http://www.clarkcountynv.gov/Depts/family_services/Pages/default.aspx (last visited February 25, 2014). However, upon information and belief, numerous studies and reports have found that Clark County is, (under the purview of the State) and has been for years, failing in that role.

30.     Once Defendants remove a child from his home, they assume an obligation to place that child into a safe and appropriate living situation with foster parents or other caregivers to take care of him. 42 U.S.C. § 671(a)(22).

31.     This obligation that Defendants assume under federal law requires that "before a child in foster care under the responsibility of the State is placed with prospective foster parents, the prospective foster parents will be prepared adequately with the appropriate knowledge and skills to provide for the needs of the child, and that such preparation will be continued, as necessary, after the placement of the child." 42 U.S.C. § 671(a)(24).

32.     Upon information and belief, State DCFS acknowledges this obligation and it is documented in the Substitute Care Manual, which unequivocally requires social workers to report to child's foster care providers the child's medical history in addition to any "acting

out" behavior tendencies. By law, the social workers must inform foster parents with this information prior to placing the child.

33.     Nevada law mandates that Defendants must immediately investigate any report of possible abuse or neglect involving a child under the age of six who is at a high risk for serious harm, or who has visible signs of physical abuse. Nev. Rev. Stat. § 432B.260. Defendants must evaluate all other reports within three days. *Id.* If during the evaluation the Defendants conclude that an investigation is warranted, they must initiate the investigation within three days form the end of the evaluation. *Id.*

34.     Upon information and belief, State Defendants have been well aware of the tragic consequences of failing to investigate a case appropriately. Upon information and belief, in 1995, the State created Child Death Review Teams to investigate the circumstances surrounding children who died as a likely result of maltreatment. Upon information and belief, State policy dictates that any information about the death or near death of a child with child welfare involvement "must be made available to DCFS Administration not later than 48 hours after a fatality and not later than 5 business days after a near fatality." Upon information and belief, Nevada DCFS then posts the available information on its website. Upon information and belief, Federal oversight further ensures that State Defendants are aware of the circumstances surrounding child deaths. Upon information and belief, between October 2005 and August 2006, for example, Federal DHHS's Administration for Children and Families made at least six requests to State Defendants for investigation into the deaths of children in Clark County. Upon information and belief, the findings reveal several instances of children dying after Clark County CPS failed to investigate or substantiate a prior report of abuse or neglect or dying after CPS substantiated the reports but failed to take further action. Upon

information and belief, the Child Fatality Disclosures posted since 2011 indicate that in more than one-third of the deaths or near deaths of children in Clark County related to child abuse or neglect, prior reports of abuse and/or neglect had been made against the child's caregivers.

35.     Upon information and belief, the 2009 Federal Review concluded that following reports of neglect or abuse, the State of Nevada fails to meet national standards for appropriately conducting ongoing risk assessments to assess safety-related concerns, including whether a child is likely to be in immediate or imminent danger of serious physical harm.

36.     On or about November 1, 2012, Alexander L. ("Alexander") was removed from the care of his mother's [Plaintiff Nelson] care by Clark County DFS, and placed into the foster care system based on the fact that Plaintiff Nelson was taken into custody for an outstanding warrant for an unpaid taxi cab fare.

37.     On or about August 31, 2012, Kasondra Martinsen ("Martinsen") completed requirements for foster care licensing.

38.     On or about October 15, 2012, Clark County DFS approved and issued a license to Martinsen as a first time foster parent.

39.     On or about November 1, 2012, Clark County DFS released Alexander from Child Haven and placed Alexander in the home of foster parent Martinsen's home.

40.     On or about November 2, 2012, the agency caseworker for Clark County DFS noted a "male friend" of Martinsen at the home, in which Martinsen disclosed that this "male friend" comes to the home 2-3 times each week. On this same day, the agency caseworker observed bandages on both of Alexander's thighs and a red irritated left eye.

41.     Upon information and belief, the agency caseworker did not conduct a background check on the "male friend" despite collecting his information.

42. Upon information and belief, this "male friend" was Osbaldo Sanchez who had an active warrant out for his arrest.

43. On November 9, 2012, Martinsen enrolled Alexander in an approved day care. On this same day, Martinsen called the agency caseworker for County Defendants to report Alexander's lack of emotions, engagement with other children, and that he apparently slept "too much." Martinsen also disclosed that another six year-old foster child placed in the home is a victim of sexual abuse and is not currently in treatment, in which the agency caseworker for County Defendants advised Martinsen to keep the children in separate bedrooms.

44. On November 10, 2012, Martinsen took Alexander, in an unresponsive state, to Mountainview Hospital. Martinsen reported Alexander's condition to the agency on-call worker for County Defendants and claimed she was home when Alexander was injured.

45. On November 11, 2012, Clark County DFS received a call and reported that Alexander suffered severe head injuries. Martinsen disclosed that she was not home at the time Alexander was injured and stated she left Alexander with Osbaldo Sanchez to supervise the children for approximately 12 hours. Martinsen reported that when she arrived home from work, she found Alexander struggling to open his left eye, and appeared disoriented. Martinsen stated that she falsely reported that she was home during the injury because she did not want Osbaldo Sanchez "to get in trouble." Martinsen reported that Osbaldo Sanchez told her that Alexander slipped and hit his head on the edge of the bathtub. Martinsen knew that she was required to use the approved day care provider, but her shift was too long and the day care provider would not be able to extend the care for duration of her shift.

46. The agency and foster mother Martinsen were both aware that supplemental child care was needed for Alexander and the other foster child present in the home.

47.     On this same day, medical staff at Moutainview Hospital determined that Alexander required specialized care for a brain injury and transported Alexander via ambulance to Sunrise Children's Hospital where he underwent emergency surgery to remove a portion of his skull to allow his brain to expand due to excessive swelling. Alexander suffered from an acute subdural hematoma with significant mass effect and midline shift. Hospital staff reported that it was unclear if Alexander's injuries were survivable.

48.     Las Vegas Metropolitan Police Department ("LVMPD"), Abuse and Neglect Specialist T. Tavarez responded to the hospital and met with DFS Investigator PJ Moore and DFS Supervisor Chris Carroll. Thereafter, LVMPD arrested Osbaldo Sanchez and questioned him regarding his involvement in the injury.

49.     Osbaldo Sanchez stated that he never called for emergency assistance for Alexander because there was not an available phone in the home of the Clark County DFS approved foster care parent's home.

50.     On or about November 12, 2012, Alexander was examined by an ophthalmologist at Sunrise Hospital who diagnosed Alexander with multi-layered retinal hemorrhages and documented that Alexander's injuries were consistent with Shaken Baby Syndrome Inflicted Childhood Neurotrauma. Sunrise Hospital medical staff advised LVMPD Abuse and Neglect Specialist T. Tavarez that Alexander had been diagnosed with Abusive Head Trauma.

51.     It was determined that Alexander had been severely abused while under the care and supervision of Clark County DFS's approved foster care home, which resulted in brain swelling, subdural hematoma, and layered retinal hemorrhages in both eyes.

52.    On or about November 30, 2012, CPS substantiated physical risk/neglect with regard to Martinsen, and physical abuse with regard to Osbaldo Sanchez.

53.    On or about December 3, 2012, Alexander was transferred from Sunrise Children's Hospital to Care Meridian, a permanent care facility.

54.    To date Alexander remains at Care Meridian. His long term prognosis is uncertain.

### FIRST CAUSE OF ACTION
**Violation of Substantive Due Process: Duty to Protect**
**42 U.S.C. § 1983**
**(Substantive Due Process)**

55.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

56.    Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all Defendants.

57.    Defendants conduct as alleged herein deprived Alexander of his clearly established and well-settled rights under the Fourteenth Amended as to the United States Constitution, including his right to be free from harm while involuntarily in government custody and the right not to be deprived of life and liberty without due process of law.

58.    Defendants' acts or omissions include, but are not limited to:

    a.  Failure to conduct legally required visits with foster children;

    b.  Failure to ensure the adequacy of approved caregivers;

    c.  Failure to ensure that caregivers are informed of and practice proper procedure when leaving foster children in the care of another;

    d.  Failure to ensure caregivers are knowledgeable and practice DFS policies;

e.  Failure to adequately respond to reports of abuse;

f.  Failure to disclose information surrounding reports of abuse;

g.  Failure to provide reasonably safe and minimally adequate caregiver placements; and

h.  Failure to establish or implement policies and procedures required to ensure satisfaction of the foregoing obligations.

59.  Defendants, and each of them, acted under color of state law as to the matters set forth herein.

60.  The acts and omissions of Defendants set forth herein demonstrate a lack of professional judgment and deliberate indifference in depriving Alexander of his Constitutional rights and were objectively unreasonable given the known facts and circumstances.

61.  Said acts and omissions constitute a policy, pattern, custom, practice, and/or ratification of a subordinate's action that deprived Alexander of his Constitutional rights.

62.  Defendants have failed to adequately train, supervise, hire, instruct, evaluate, investigate, and monitor caseworkers and supervisors. Defendants conduct in failing to provide prompt, periodic, and necessary screening, assessments, and treatment services to address Alexander's physical and mental health needs has injured him. Defendants acted with deliberate indifference to the consequences of these failures, which resulted directly in the deprivation of Alexander's Constitutional rights.

63.  As a direct and proximate result of the acts and omissions complained of herein, Plaintiff and Alexander have suffered damages, including significant physical and emotional harm, the exact amount to be proven at trial.

64.     That as a further proximate result of the wrongful actions of Defendants, Plaintiff and Alexander has lost the enjoyment of life. Plaintiff has been deprived of society, love, comfort, and companionship of Alexander.

65.     That the wrongful and unlawful acts perpetrated by the Defendants, and each of them, intentionally disregarding the Constitutional rights of Alexander were willful, oppressive, malicious, and with a wanton disregard for the established rights of Plaintiff and Alexander.

## SECOND CAUSE OF ACTION
### Violation of Substantive Due Process: State Created Danger
### 42 U.S.C. § 1983
### Plaintiff Natalie Nelson v. All Defendants

66.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

67.     When Defendants removed Alexander from his home and caused him to live with foster parent, Martinsen, Defendants are and/or were obligated to ensure that Alexander was safe in the placement they chose for him.

68.     Defendants' conduct deprived Alexander of his clearly established and well-settled rights under the Fourteenth Amendment to the United States Constitution, including acting with deliberate indifference to known or obvious danger in removing Alexander from his home and placing him in the care of a foster caregiver who was unfit to care for him and posed an imminent risk of harm to Alexander's safety.

69.     Defendants, and each of them, acted under color of state law as to the matters set forth herein.

70.     The acts and omissions of Defendants set forth herein demonstrate a lack of professional judgment and deliberate indifference in depriving Alexander of his known Constitutional rights and were objectively unreasonable given the known facts and circumstances.

71.     Said acts and omissions constitute a policy, pattern, custom, practice, and/or ratification of a subordinate's action that deprived Alexander of his Constitutional rights.

72.     Defendants have failed to adequately train, supervise, hire, instruct, evaluate, investigate, and monitor caseworkers and supervisors. Defendants acted with deliberate indifference to the consequences of these failures which resulted directly in the deprivation of Alexander's Constitutional rights.

73.     As a direct and proximate result of the acts and omissions complained of herein, Plaintiff and Alexander have suffered damages, including significant physical and emotional harm, the exact amount to be proven at trial.

74.     That as a further proximate result of the wrongful actions of Defendants, Plaintiff and Alexander has lost the enjoyment of life. Plaintiff has been deprived of society, love, comfort, and companionship of Alexander.

75.     That the wrongful and unlawful acts perpetrated by the Defendants, and each of them, intentionally disregarding the Constitutional rights of Alexander were willful, oppressive, malicious, and with wanton disregard for the established rights of Plaintiff and Alexander.

/ / /

/ / /

/ / /

**THIRD CAUSE OF ACTION**
**Violation of Plaintiff's Civil Rights-Familial Relationships 42 USC § 1983**
**Plaintiff Natalie Nelson v. All Defendants**

76.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

77.     Defendants, and each of them, acting under color of state law, deprived Plaintiff and Alexander of their right to a familial relationship without due process of law, by subjecting Alexander to physical abuse while placed in a foster home with an inadequate caregiver, resulting in severe brain injuries and the need for lifetime medical care, in violation of the known rights secured by the Fourteenth Amendment to the United States Constitution.

78.     That as a direct and proximate result of the foregoing wrongful acts of Defendants, and each of them, Plaintiff has been deprived of the society, love, comfort, companionship, and services of Alexander.

79.     As a direct and proximate result of Defendants' conduct as herein alleged, Plaintiff and Alexander have been damaged, the exact amount to be proven at trial.

80.     That the wrongful and unlawful acts perpetrated by the Defendants, and each of them, intentionally disregarding the Constitutional rights of Plaintiff and Alexander, were willful, oppressive, malicious, and with a wanton disregard for the established rights of Plaintiff and Alexander.

**FOURTH CAUSE OF ACTION**
**Violation of Plaintiff's Civil Rights-Municipal Liability 42 USC § 1983**
**Plaintiff Natalie Nelson v. All Defendants**

81.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

82.     Plaintiff further alleges that it is the policy, practice, and custom of DFS, its supervisors and caseworkers, to tolerate and ratify the placement of children with foster caregivers without concern for the adequacy of the placement or the qualifications of caregivers.

83.     Plaintiffs also allege that it is the policy, practice, and custom of DFS to inadequately hire, train, and supervise its caseworkers, supervisors, agents and/or employees in the placement of foster children with adequate caregivers.

84.     As a direct and proximate result of Defendants' conduct as herein alleged, Plaintiff and Alexander have been damaged, the exact amount to be proven at trial.

85.     That the wrongful and unlawful acts perpetrated by the Defendants, and each of them, were objectively unreasonable given the known facts and circumstances, and demonstrate an intentional disregard for the known Constitutional rights of the Plaintiff and Alexander, were willful, oppressive, malicious, and with a wanton disregard for the established rights of Plaintiff and Alexander L.

### FIFTH CAUSE OF ACTION
**Violation of Adoption and Safe Families Act**
**42 U.S.C. § 1983 and 42 U.S.C. § 671**
**Plaintiff Natalie Nelson v. All Defendants**

86.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

87.     Defendants, and each of them, acted under color of state law as to the matters set forth herein.

88.     The conduct of Defendants as alleged herein violated Alexander's statutory rights under the Adoption and Safe Families Act of 1997, 42 U.S.C. § 671 *et seq*., which

ensures, in part, that children in foster care placement are provided quality services that protect their safety and health pursuant to 42 U.S.C. § 671(a)(22) and 42 U.S.C. § 671(a)(10), and also ensures that foster parents are adequately prepared with the appropriate knowledge and skills to provide for the needs of the child pursuant to 42 U.S.C. § 671(a)(24).

89.    Plaintiff alleges that Defendants failed to place Alexander in a safe and appropriate living situation with a qualified caregiver, which resulted in traumatic physical abuse and a life altering brain injury.

90.    Plaintiff alleges that Defendants failed to provide foster mother Kasondra Martinsen with DFS policy standards requiring that Alexander be left in the care of a DFS approved caregiver during periods of time that Martinsen is unable to monitor the child.

91.    That as a result of the lack of quality services and safety standards implemented by DFS, Alexander will require lifelong medical care and treatment.

92.    Defendants acts and omissions alleged herein were objectively unreasonable and constitute a policy, pattern, custom, practice, and/or ratification of a subordinate's action that deprived Alexander of his particular statutory rights set forth in 42 U.S.C. § 675.

93.    Defendants have failed to adequately train, supervise, hire, instruct, evaluate, investigate, and monitor caseworkers and supervisors. Defendants acted with deliberate indifference to the consequences of these failures, which resulted directly in the deprivation of Alexander's statutory rights.

94.    As a direct and proximate result of Defendants' objectively unreasonable conduct as alleged herein, Plaintiff and Alexander have been damaged, the exact amount to be proven at trial. These damages are compensable pursuant to 42 U.S.C. § 1983.

95.     That the wrongful and unlawful acts perpetrated by the Defendants, and each of them, intentionally disregarding the known Constitutional rights of Plaintiff and Alexander, were willful, oppressive, malicious, and with a wanton disregard for the established rights of Plaintiff and Alexander.

## SIXTH CAUSE OF ACTION
### Violation of State Civil Rights
### Plaintiff Natalie Nelson v. Defendants

96.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

97.     Plaintiff alleges that by the wrongful and unlawful conduct of all Defendants, Defendants was objectively unreasonable and violated Alexander's known right to a protected liberty interest, reasonable safety, and adequate care secured by Article 1, Section 8 of the Constitution of the State of Nevada.

98.     As a direct and proximate result of Defendants' conduct as herein alleged, Plaintiff has sustained damages in excess of ten thousand dollars ($10,000.00).

99.     That the wrong and unlawful acts perpetrated by the Defendants, and each of them, in intentionally disregarding the Constitutional rights of the Plaintiff and Alexander, were willful, oppressive, malicious, and with wanton disregard for the established rights of the Plaintiff and Alexander.

## SEVENTH CAUSE OF ACTION
### Negligence
### Plaintiff Natalie Nelson v. All Defendants

100.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

101.   At all times mentioned herein, Defendants were subject to a known duty of care to place Alexander with a qualified and able caregiver, and to ensure the child remained safe from physical harm, Defendants were objectively unreasonable and negligent in performing their duties and failed, neglected, and/or refused to properly and fully discharge their responsibilities, including but not limited to the duties prescribed by Nev. Admin. Code §§ 432B.400, 432B.405 424.565, 432B.150, 432B.155 and Nev. Rev. Stat. §§ 432B.260 and 424.038.

102.   Defendants breached this duty when they placed Alexander with foster parent Kasondra Martinsen, which resulted in Alexander being physically abused and violently shaken causing substantial brain injuries.

103.   As a direct and proximate result of Defendants' negligence, Plaintiff and Alexander have sustained damages in an amount in excess of ten thousand dollars ($10,000.00).

104.   That as a direct and proximate result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to an award of attorney's fees and costs.

## EIGHTH CAUSE OF ACTION
### Negligent Supervision and Training
### Plaintiff Natalie Nelson v. All Defendants

105.   Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

106.   Defendants had a known mandatory duty to properly and adequately train and supervise DFS caseworkers, supervisors, agents, and/or employees under their control, so as to avoid unreasonable risk of harm to children placed in foster care.

107. Defendants breached this duty of care to adequately train and supervise DFS caseworkers, supervisors, agents, and/or employees by failing to implement, or by inadequately implementing training and supervisory procedures regarding foster care placement and their conduct was objectively unreasonable given the facts and circumstances known to them.

108. As a direct and proximate result of Defendants' negligence as herein alleged, Plaintiff and Alexander have sustained damages in an amount in excess of ten thousand dollars ($10,000.00).

109. That as a direct and proximate result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to an award of attorney's fees and costs.

## NINTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### All Plaintiffs v. All Defendants

110. Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

111. Defendants' negligent actions in placing Alexander with an unqualified and untrained caregiver resulted in severe physical abuse, substantial brain injuries, and prolonged brain trauma suffered by Alexander while under the care of DFS.

112. Plaintiffs are the maternal mother and grandparents of Alexander, and are closely related to him.

113. Plaintiffs have been forced to endure the repercussions of the injuries sustained by Alexander as a result of Defendants' actions, as Plaintiffs are the primary caregivers of Alexander.

23

114.     As a result of Defendants' objectively unreasonable actions and the physical harm inflicted upon Alexander, Plaintiffs suffered severe emotional distress.

115.     That as a direct and proximate result of Defendants' actions, Plaintiffs have been placed in a situation where they must witness Alexander in an injured and unresponsive state.

116.     As a direct and proximate result of Defendants' negligent actions, Plaintiffs sustained damages in an amount in excess of ten thousand dollars ($10,000.00).

117.     That as a direct and proximate result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to an award of attorney's fees and costs.

### TENTH CAUSE OF ACTION
**Vicarious Liability**
**Plaintiff Natalie Nelson v. All Defendants**

118.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

119.     That Defendants were responsible for the acts of their subordinate caregivers, caseworkers, supervisors, agents, and/or employees as Defendants had the right, ability, and duty to control said individuals.

120.     That Kasondra Martinsen, in her capacity as an approved foster caregiver for DFS, was an agent for DFS, and as such, Defendants are liable for her actions.

121.     That Defendants continued to utilize said subordinate caregivers, caseworkers, supervisors, agents, and/or employees, despite being on clear notice that these individuals were not properly trained, supervised, and/or monitored.

122.   Defendants knew or should have known that said employees and agents of Defendants were not capable of acting in the capacity as representatives for DFS.

123.   That all of the above described conduct by Defendants, or agents thereof, was objectively unreasonable and took place while said agents were performing duties within the scope of the employment and/or agency relationship, and therefore Defendants are responsible for any and all damages to Plaintiff, resulting from the acts of their agents, under the doctrine of Vicarious Liability.

124.   As a direct and proximate result of the aforesaid intentional, reckless, careless and negligent conduct of Defendants, Plaintiff and Alexander suffered damages, in an amount in excess of ten thousand dollars ($10,000.00).

125.   That as a direct and proximate result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to an award of attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION
### Civil Conspiracy
### Plaintiff Natalie Nelson v. All Defendants

126.   Plaintiff repeats and realleges the allegations contained in the above paragraphs as though fully set forth herein.

127.   An actionable civil conspiracy consists against Defendants when they intended, by their concerted action(s) of concealing the facts surrounding the incident of physical abuse upon Alexander, to hide their true actions by using criminal or unlawful means. Damage resulted from said act(s).

128.   Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Plaintiff when Defendants attempted to move minor child

Alexander from his current placement at Care Meridian in Las Vegas, NV, to an Arizona facility without cause and without notifying Plaintiff or Plaintiff's counsel in an attempt to sequester and take the child from his family.

129.    As fully set forth in the above paragraphs, Defendants confederated and agreed together, one with the other, and with others who may be yet unnamed, to act in concert to cause severe damage to Plaintiff, and cover up the physical abuse and brain trauma suffered by Alexander.

130.    The actions of the Defendants were the direct and legal cause of pain, lasting injury, deprivation of liberty, and continued emotional distress, suffered by Plaintiff and Alexander L.

131.    As a direct and proximate result of Defendants' actions Plaintiff and Alexander sustained damages in an amount in excess of ten thousand dollars ($10,000.00).

132.    Plaintiff is informed and believes that the acts of Defendants were willful, malicious, intentional, and oppressive and that these acts were done in conscious disregard for the rights, welfare, and safety of Plaintiff and Alexander, justifying an award of punitive damages.

133.    That as a direct and proximate result of Defendants' actions, Plaintiff has been forced to retain the services of an attorney and is entitled to an award of attorney's fees and costs.

## TWELFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### All Plaintiffs v. All Defendants

134.    Plaintiffs repeat and reallege the allegations contained in the above paragraphs as though fully set forth herein.

135.    Defendants' actions in intentionally concealing the injuries sustained by Alexander and the circumstances surrounding his physical abuse were extreme and outrageous and constitute a pattern and/or practice on the part of Defendants.

136.    Defendants' intentional actions were the direct and proximate cause of Plaintiffs' damages suffered.

137.    Plaintiffs suffered severe emotional distress as a result of Defendants' actions.

138.    As a direct and proximate result of Defendants actions, Plaintiffs have been damaged in an amount in excess of ten thousand dollars ($10,000.00).

139.    These acts were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, justifying the award of punitive damages.

140.     That as a direct and proximate result of Defendants' actions, Plaintiffs have been forced to retain the services of an attorney and are entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiffs pray for judgment as follows:

As to the Federal Claims:

1.    For compensatory damages in the amount of $20,000,000.00;
2.    For punitive damages against the Defendant caseworkers and/or supervisors in the amount of $5,000,000.00;
3.    For punitive damages against the DOE named caseworkers, supervisors, and/or employees in the amount deemed appropriate by this Court to punish them for their wrongful conduct and set an example to deter future misconduct;
4.    For special damages;
5.    For reasonable attorney's fees pursuant to 42 USC §§ 1983 and 1988;
6.    For costs of suit;
7.    For such other and further relief as this Court deems just and proper.

As to the State Claims:

1.    For compensatory damages in an amount in excess of $10,000.00;

2.      For punitive damages in an amount deemed appropriate to punish the Defendants for their wrongful and egregious conduct;

3.      For general damages in excess of $10,000.00;

4.      For special damages;

5.      For an award of reasonable attorney fees;

6.      For costs of suit;

7.      For such other and further relief as this Court deems just and proper.

DATED this 26th day of February, 2014.

EGLET WALL CHRISTIANSEN           SAGGESE & ASSOCIATES, LTD.


    /s/ Peter S. Christiansen, Esq.           /s/ Marc A. Saggese, Esq.

By_____   By_____

   PETER S. CHRISTIANSEN, ESQ.          MARC A. SAGGESE, ESQ.

   *Attorneys for Natalie Nelson as legal*       *Attorney for all Plaintiffs*

   *Guardian of minor child Alexander L.*

EGLET WALL CHRISTIANSEN
Trial Attorneys

**<ins>CERTIFICATE OF SERVICE</ins>**

Pursuant to FRCP 5(b), I certify that I am an employee of EGLET WALL CHRISTIANSEN and that on this 26TH  day of February, 2014, I did cause a true copy of the foregoing **FIRST AMENDED COMPLAINT** to be served via CM/ECF electronic filing upon the following person(s):

Walter R. Cannon, Esq.
Felicia Galati, Esq.
Olson, Cannon, Gormley, Angulo & Stoberski
9950 West Cheyenne Avenue
Las Vegas, NV 89129-
702-384-4012
702-383-0701 (fax)
nlangenderfer@ocgd.com
fgalati@ocgas.com
*Attorneys for Defendants*
*Clark County, Donald G. Burnette and*
*Lisa Ruiz-Lee*

Shannon Richards
Attorney General's Office
555 East Washington Ave
Suite 3900
Las Vegas, NV 89101
702-486-3127
srichards@ag.nv.gov
*Attorneys for Defendants*
*Amber Howell and Michael Willden*

Marc A Saggese
Saggese & Associates, Ltd.
732 S. Sixth Street
Suite 201
Las Vegas, NV 89101
702.778.8883
702.778.8884 (fax)
marc@maxlawnv.com
*Attorney for Plaintiffs*

_____/s/ Jonathan D. Crain_____
An employee of Eglet Wall Christiansen