**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NATALIE NELSON, individually and as natural mother and legal guardian of minor child ALEXANDER L.; RICHARD E. NELSON, maternal grandfather of ALEXANDER L.; CATHERINE R. NELSON, maternal grandmother of ALEXANDER L.,<br><br>     Plaintiffs,<br> vs.<br><br>MICHAEL WILLDEN, Director of the Nevada Department of Health and Human Services; AMBER HOWELL, Administrator of the Nevada Division of Child and Family Services; DONALD BURNETTE, Clark County Manager; CLARK COUNTY; LISA RUIZ-LEE, Director of Clark County Department of Family Services; DOES I-X, inclusive; DOES XI-XX, inclusive,<br><br>     Defendants. | Case No.: 2:13-cv-00050-GMN-VCF<br><br>**ORDER** |

  Pending before the Court is the Motion to Dismiss (ECF No. 54) filed by Defendants Michael Willden and Amber Howell ("State Defendants"). Plaintiffs Natalie Nelson, Richard E. Nelson, and Catherine R. Nelson filed a Response (ECF No. 58) and the State Defendants filed a reply (ECF No. 60).

**I. BACKGROUND**

  This case arises from the tragic events that occurred on November 10, 2012 and resulted in the hospitalization of Plaintiff Alexander L. Specifically, Plaintiffs allege that Alexander was placed into foster care by Clark County Department of Family Services ("DFS") after his mother, Plaintiff Natalie Nelson, was taken into custody for an outstanding warrant for an

unpaid taxi cab fare. (Am. Compl. ¶ 36, ECF No. 48).  Alexander was ultimately placed in the care of a DFS approved foster mother who, on November 10, 2012, left the child in the care of Osbaldo Sanchez for twelve hours or longer. (*Id.* ¶ 45).  That same evening, the foster mother "took Alexander to Mountain View Hospital in an unresponsive state." (*Id.* ¶ 44).  Later that evening, Alexander was transported to Sunrise Children's Hospital where "he underwent emergency surgery to remove a portion of his skull to allow for his brain to expand due to excessive swelling." (*Id.* ¶ 47).  On November 11, 2012, DFS was notified of the incident. (*Id.* ¶ 45).  On November 12, 2012, medical staff at Sunrise Hospital determined that "Alexander's injuries were consistent with Shaken Baby Syndrome Inflicted Childhood Neurotrauma." (*Id.* ¶ 50).  Several weeks later, Alexander was transferred to a permanent care facility and "[h]is long term prognosis is uncertain." (*Id.* ¶¶ 53–54).

After this incident, Plaintiffs[1] filed the instant action alleging twelve causes of action: (1) Violation of Substantive Due Process: Duty to Protect; (2) Violation of Substantive Due Process: State Created Danger; (3) Violation of Plaintiff's Civil Rights – Familial Relationships; (4) Violation of Plaintiff's Civil Rights – Municipal Liability; (5) Violation of Adoption and Safe Families Act; (6) Violation of State Civil Rights; (7) Negligence; (8) Negligent Supervision and Training; (9) Negligent Infliction of Emotional Distress; (10) Vicarious Liability; (11) Civil Conspiracy; and (12) Intentional Infliction of Emotional Distress. (*Id.* ¶¶ 55–140).

In response, Defendant Amber Howell, Administrator of the Nevada Division of Child and Family Services, and Defendant Michael Willden, Director of the Nevada Department of Health and Human Services, (the "State Defendants") filed a Motion to Dismiss. (ECF No. 13).

---

[1] Plaintiffs consist of Natalie Nelson, in her individual capacity as the natural mother and as representative for the minor child; Richard E. Nelson, the maternal grandfather of the minor child; and Catherine R. Nelson, the maternal grandmother of the minor child.  Defendant Clark County further identifies Jonathan Laws, as the minor's natural father, who may have an interest but has not been named as a participant. (ECF No. 25).

In their Motion, the State Defendants first asserted that all Plaintiffs' causes of action seeking money damages against the State Defendants in their official capacities must fail because they are entitled to sovereign immunity. (*Id.* 3:21–4:19). In addition, the State Defendants' sought dismissal of Plaintiffs' first through fifth causes of action because Plaintiffs failed to properly allege individual capacity claims. (*Id.* 4:20–22). The Court granted the Motion, dismissing with prejudice Plaintiffs' claims against the State Defendants in their official capacities and dismissing without prejudice Plaintiffs' claims against the State Defendants in their individual capacities. (Order Granting Mot. to Dismiss 7:8–12, ECF No. 46). The Court also granted Plaintiffs leave to file an amended complaint. (*Id.* 7:3–6).

On February 26, 2014, Plaintiffs filed an Amended Complaint (ECF No. 48), to which the State Defendants filed the instant Motion to Dismiss (ECF No. 54). In their Motion, the State Defendants first assert that Plaintiffs' first through fifth causes of action fail to state a claim against the State Defendants because Plaintiffs' claims are still too broad to sufficiently allege the personal involvement or knowledge of the State Defendants, Plaintiffs' claims fail to allege essential elements of the claims, and the State Defendants are entitled to qualified immunity. (Defs.' Mot. to Dismiss 3:9–10:23). In addition, the State Defendants seek dismissal of Plaintiffs' sixth through twelfth causes of action for failing to state a claim against the State Defendants. (*Id.* 10:24–12:25).

## II. LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III.     DISCUSSION

To successfully bring a 42 U.S.C. § 1983 claim, a plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person acting under color of state law." *West v. Atkins*, 487 US 42, 49 (1988).  Further, "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 US 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Plaintiffs' Amended Complaint enumerates twelve causes of action asserted against "All Defendants" or "Defendants." (*See* Am. Compl. ¶¶ 66-134).  State Defendants' Motion to Dismiss asserts that eleven of the twelve causes of action should be dismissed. (Mot. to Dismiss 3:9–12:25, ECF No. 54).  State Defendants allege the first five causes of action arising under 42 U.S.C. § 1983 should be dismissed because Plaintiffs have "made little to no changes to their

causes of actions" and "their causes of action in the Amended Complaint remain almost exactly the same as they were previously stated in their Complaint … that was dismissed." (*Id.* 3:6–19). Further, State Defendants allege Plaintiffs' negligence claims fail due to discretionary immunity. (*Id.* 10:24). Moreover, State Defendants seek to dismiss Plaintiffs' Sixth Cause of Action alleging due process rights violated per the Nevada Constitution, as the claim is analogous to the § 1983 causes of action (*Id.* 12:1–4), and Plaintiffs' Twelfth Cause of Action due to Plaintiffs' failure to state a claim (*Id.* 12:15–18). In regards to Plaintiffs' Tenth Cause of Action, State Defendants argue that vicarious liability is not a cause of action and therefore should be dismissed. (*Id.* 12:22–24).

**A. § 1983 Claims**

Plaintiffs allege causes of action against State Defendant Michael Willden, Director of the Nevada Department of Health and Human Services ("Nevada DHHS"), and State Defendant Amber Howell, the present Administrator of the Nevada Division of Child and Family Services ("State DCFS") in their individual capacities. (Am. Compl. ¶¶ 10–13). When seeking to impose personal liability on a state official pursuant to 42 U.S.C. § 1983, "a plaintiff must show only that 'the official, acting under color of state law, caused the deprivation of a federal right.'" *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Further, personal liability is not contingent on whether the state official acted within his or her authority, but "the only issue is whether the conduct was undertaken under color of state law." *Id.* at 1060-61. When seeking to impose personal liability on a state official, any judgment against the official "comes from the official's *own* resources… [thus,] the Eleventh Amendment is not implicated, because the claim is truly against the individual, not the State." *Id.* at 1060.

Customarily, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County*

*Dept. of Soc. Services*, 489 U.S. 189, 197 (1989). Further, "the Fourteenth Amendment's Due Process Clause…does not confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012). However, two exceptions exist: the special relationship exception and the state-created danger exception. *Id.* The special relationship exception is "when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being." *Id.* The state-created danger exception is "when 'the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known and obvious danger.'"" *Id.* (quoting *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). If either exception applies, "a state's omission or failure to protect may give rise to a § 1983 claim" and a Fourteenth Amendment due process violation. *Id.*

When alleging a Fourteenth Amendment violation due to deliberate indifference, a plaintiff may state a § 1983 claim against a supervisor. *Id.* at 1003. Supervisor liability exists when the supervisor has "(1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Further, a supervisor is liable "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of other." *Id.* at 1208. To adequately plead the § 1983 supervisor liability claim, the complaint must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "must plausibly suggest an entitlement to relief." *Id.* at 1216.

In *Henry A.*, foster children plaintiffs brought a 42 U.S.C. § 1983 action against both Nevada State and County officials, alleging Fourteenth Amendment substantive due process

violations. *Henry A.*, 678 F.3d at 996.  The plaintiffs analogously asserted the Clark County foster care system is "plagued by systematic failures that result in violations of the rights guaranteed to foster children." *Id.*  The Ninth Circuit addressed the validity of the Fourteenth Amendment claims collectively, regarding both State and County defendants. *See id.* at 998–1003.

However, concerning the similar claims against State defendants in their individual capacities, the Ninth Circuit held there were "few specific allegations against the State defendants" and plaintiffs did not specify which allegations in the complaint were committed by the State defendants; therefore, "it is implausible to suggest that [State defendants] Willden or Comeaux personally committed the alleged violation." *Id.* at 1004.  Furthermore, the court held that the few allegations specifying State defendants were "too general to state a claim for supervisory liability." *Id.*  Where the complaint alleged that defendants had "knowledge of independent reports documenting the systematic failures of foster care in Nevada," plaintiffs failed to allege that the supervisory State defendants "had any personal knowledge of the specific constitutional violations that led to Plaintiffs' injuries, or that they had any direct responsibility to train or supervise the caseworkers employed by Clark County." *Id.*  The Ninth Circuit remanded the case for further proceedings. *Id.* at 1012.

On remand, the district court held that plaintiffs "failed to cure the lack of a sufficient claim of personal involvement" for the State defendants in their individual capacity. *Henry A. v. Willden*, 2:10-CV-00528-RCJ, 2013 WL 759479, at *8 (D. Nev. Feb. 27, 2013).  Specifically, "[o]ther than to identify them or specify their duties generally," the amended complaint never mentioned the specific State defendants "in connection with any failing with respect to a particular Plaintiff." *Id.*  The amended complaint only listed State defendants' "various duties and alleges a systematic failure to ensure [these duties] were carried out, the kind of supervisory responsibility claim that is not cognizable under § 1983." *Id.*  Therefore, the court

dismissed the substantive due process claims against State defendants in their individual capacities. *Id.*

Here, the Amended Complaint states that State Defendants are officials acting under color of law. (Am. Compl. ¶ 10, 12). Plaintiffs allege that State Defendants caused the deprivation of Alexander's Fourteenth Amendment right by possessing and breaching the duty to maintain and supervise the State's child welfare system, to provide training for caseworkers, and to take action when Counties do not follow procedures adequately. (*Id.* ¶ 25–27). Plaintiffs contend that Alexander's injuries and harms would not have occurred if State Defendants had not allegedly violated these duties, and Alexander's injuries are thus intrinsically tied to a Fourteenth Amendment violation. (*Id.* ¶ 26–27). Specifically, Plaintiffs assert a Fourteenth Amendment violation by raising claims under both the special relationship exception and the state-created danger exception, arguing (1) State Defendants have deprived Alexander of "his right to be free from harm while involuntarily in government custody" (*Id*. at ¶ 57), and (2) State Defendants created danger by acting in "deliberate indifference to known or obvious danger in removing Alexander from his home and placing him in the care of a foster caregiver who was unfit to care for him and posed an imminent risk of harm to Alexander's safety" (Am. Compl. ¶ 68).

However, Plaintiffs fail to state a specific claim against State Defendants concerning the § 1983 causes of action. First, Plaintiffs again refer to Defendants collectively in the enumerated causes of action instead of specifying which allegations are explicitly against each of the State Defendants. (Am. Compl. ¶¶ 55–140). Plaintiffs later contend in their Response that State and County Defendants are referred to collectively due to the "shared" actions and responsibilities between State and County defendants. (Pls.' Resp. 11:9–12, ECF No. 58). However, similar to *Henry A.* on remand, Plaintiffs cannot assert specified duties generally and must specify State Defendants in connection with detailed violations or failings to Plaintiffs,

which failed to occur here. *Henry A*, 2013 WL 759479, at *8.  Subsequently, under *Henry A.*, Ninth Circuit courts require additional, specific facts before an individual capacity claim can survive a motion to dismiss. *Henry A.*, 678 F.3d at 1004.  Although Plaintiffs allege Defendants acted with deliberate indifference, the Amended Complaint fails to assert State Defendants' personal involvement in the constitutional deprivation. (Am. Compl. ¶¶ 60, 62, 68, 70, 72, 93). Further, Plaintiffs' assertion that Defendants had a responsibility to train or supervise caseworkers falls short of necessarily alleging what specific responsibilities either State Defendant had in regards to preventive measures, instead only broadly referencing State Defendants' general responsibilities. (Am. Compl. ¶¶ 10, 12).  Finally, Plaintiffs contending Defendants' general failing occurred due to an alleged systematic failure is not a cognizable supervisory liability claim under § 1983. *See Starr*, 652 F.3d at 1216.  Therefore, because Plaintiffs failed to state a sufficient claim under any § 1983 cause of action, the Court dismisses the first, second, third, fourth, [2] fifth, and sixth[3] causes of action against State Defendants in their individual capacity.

 B. **Negligence Claims**

Aside from the § 1983 claims, Plaintiffs allege state negligence causes of action against State Defendants, including negligence, negligent supervision and training, and negligent infliction of emotional distress. (Am. Compl. ¶¶ 100–125).  However, Nevada provides discretionary act immunity to government actors and individuals from common law claims. *See*

---

[2] Plaintiffs' Fourth Cause of Action of Municipal Liability pursuant to 42 U.S.C. § 1983 can also be dismissed because State Defendants are not a municipality, but individuals employed by the State. *See Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("The plaintiff must also demonstrate that . . . the municipality was the 'moving force' behind the injury alleged.").

[3] Plaintiffs' Sixth Cause of Action under the substantive due process clause of the Nevada Constitution (Art. 1 § 8(5)) is parallel to the Fourteenth Amendment substantive due process claims.  Therefore, the § 1983 Fourteenth Amendment analysis correspondingly applies to Plaintiff's Nevada Constitution violation.

Nev. Rev. Stat. § 41.032. The statute protects "an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions." *Id.* Accordingly, the statute "only protects state and municipal agencies against state causes of action." *Henry A.*, 2013 WL 759479, at *11.

Discretionary act immunity is granted to certain government actors for actions "[b]ased upon an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid;" or actions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies…or of any officer, employee…whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(1)–(2). The Nevada Supreme Court interpreted this statute as adopting the Federal Tort Claims Act two-part discretionary act immunity test; discretionary act immunity exists when (1) the allegedly negligent acts involve elements of judgment or choice; (2) and the judgment or choice made involves social, economic, or political policy considerations. *See Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007). The proper inquiry under this standard is not "whether the official abused his or her discretion," but "only whether the acts concerned a matter in which the official had discretion." *Henry A.*, 2013 WL 759479, at *12. Further, "federal case law consistently holds training and supervision are acts entitled to such [discretionary] immunity." *Neal-Lomax v. Las Vegas Metro. Police Dept.*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) (citing *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)).

The *Henry A.* court on remand determined that the Nevada discretionary immunity statute is not "infinitely broad;" however, "once it is determined that the acts at issue were within the breadth of the statute," then the immunity applies "even to abuses of discretion." *Henry A.*, 2013 WL 759479, at *12. Discretionary act immunity does not apply when acts are taken in "bad faith" or "acts that are completely outside the authority of an official." *Id.* In

*Henry A.*, the court held that "the management of the placement of wards of the state involve elements of judgment and choice and that Defendants' choices in the present matters, no matter how poor they may have been, were grounded on public policy concerns as expressed in the Nevada Revised Statutes." *Id.* at 15.  The court held that defendants had discretionary act immunity "from claims alleging a violation of the general duty of care." *Id.* at 16.  Further, the court held that negligence per se claims concerning the Nevada Administrative Code are barred by the discretionary immunity statute; "violations of the Code are only evidence of negligence, not negligence per se," and, because defendants were already afforded discretionary immunity in regards to the negligence claims, these motions were dismissed. *Id.* at 17.

Here, Nevada Revised Statute § 41.032 seeks to protect parties such as State Defendants through discretionary act immunity. Nev. Rev. Stat. § 41.032.  In applying the Federal Tort Claims Act test, State Defendants' allegedly negligent acts, analogous to *Henry A.*, involve elements of judgment or choice; "management of the placement of wards of the state involve elements of judgment and choice." *Henry A.*, 2013 WL 759479, at 15.  Further, similar to *Neal-Lomax*, supervisory acts are entitled to discretionary act immunity. *See Neal-Lomax*, 574 F. Supp. 2d at 1192.  Therefore, where Plaintiffs assert State Defendants were negligent in their supervisory action or failure to act, discretionary immunity applies to such supervisory decisions.  Furthermore, Plaintiffs do not accuse State Defendants of taking acts in bad faith and only allege that State Defendants, still collectively referenced to as "Defendants," only violated a known duty of care, supporting this assertion with a list of unelaborated authorities deriving from the Nevada Administrative Code and Nevada Revised Statutes. (Am. Compl. ¶ 101).  Therefore, because Plaintiffs assert State Defendants were negligent in discretionary acts, State Defendants have discretionary act immunity from negligence claims alleging a violation of the general duty of care.

Although the Amended Complaint asserts a list of statutes and codes in a conclusory

fashion, Plaintiffs contend that the list was presented in order to allege causes of action in negligence, negligent supervision and training, and negligent infliction of emotional distress, all pursuant to the theory of negligence per se. (Pls.' Resp. 25:23–25).  The list of authorities includes Nev. Admin. Code §§ 432B.400, 432B.405, 424.565, 432B.150, 432B.155 and NRS §§ 432B.260 and 424.038.  (Am. Compl. ¶ 101).  However, like in *Henry A.*, Plaintiffs cannot assert negligence per se through the Nevada Administrative Code, as the Code only evinces negligence. *Henry A.*, 2013 WL 759479, at *17.  Therefore, the negligence per se claims pursuant to the Nevada Administrative Code are barred through the previously established discretionary act immunity.

Furthermore, Plaintiffs have not provided any statutory authority obligating either State Defendant to provide training to the Clark County Department of Family Services to support the failure to train claim.  Instead, Plaintiffs contrarily assert the legislatively mandated transfer of foster care responsibilities from the State DCFS to the Counties. (Am. Compl. ¶ 24).  The only specific allegation of State Defendants' duties occurs in Plaintiffs' assertions that, regardless of the legislation, "the State still retained the duty to maintain and supervise the child welfare system Statewide" and State Defendants retained this duty to provide training pursuant to the "Intrastate Contract." (*Id.* at ¶¶ 25–26).  The Intrastate Contract provides that "State Defendants are responsible for providing training and technical assistance to Clark County." (*Id.* at ¶ 26).  However, Plaintiffs fail to provide how either State Defendant was potentially aware of the facts to infer a substantial risk of harm, what training was inadequate, what supervision was needed, and how State Defendants knew or should have known that a failure to provide the aforementioned would have caused Alexander's harm.  Furthermore, Plaintiffs fail to specify the State Defendants' statutory obligations in this matter; the only alleged authority binding State Defendants, the Intrastate Contract, is contractual, and therefore inapplicable for utilizing the theory of negligence per se. *See Chudacoff v. U. Med. Ctr. of S. Nevada*, 437 Fed.

Appx. 609, 612 (9th Cir. 2011) (unpublished) ("A negligence per se claim arises only when a duty is created by statute.").

Where Plaintiffs assert violations of Nevada Revised Statutes §§ 432B.260 and 424.038 as potentially binding statutory authority over State Defendants, both claims fall short.  Nevada Revised Statute § 424.038 concerns the duties of the foster care provider, only referencing the the State DCFS's power to "adopt regulations specifying the procedure and format for the provision of information." Nev. Rev. Stat. § 424.038(4).  Yet, Plaintiffs fail to allege how State Defendants violated this statute.  Plaintiffs contend that "State DCFS is required to promulgate regulations," but in doing so, quotes to a different statute, Nevada Revised Statute § 432B.190, and does not specify how either State Defendant failed to adopt regulations delineating procedures. (Am. Compl. ¶ 12).  Concerning Nevada Revised Statute § 432B.260, Plaintiffs fail to allege how the statute specifically applies to State Defendants, as the statute mandates the responsibilities of a child welfare service agency, and not of individual defendants. Nev. Rev. Stat. § 432B.260.  Further, Plaintiffs assert that the duty to investigate lies within Clark County's responsibility and continuously fail to assert the statutory violations of either State Defendant. (Am. Compl. ¶ 28).  Therefore, the Court finds that Plaintiffs have failed to sufficiently plead a cause of action for any of the negligence claims and grants State Defendants' Motion to Dismiss as to Plaintiffs' seventh, eighth, ninth,[4] and tenth causes of action.

C. **Intentional Infliction of Emotional Distress**

Under Nevada law, the elements for an intentional infliction of emotional distress cause

---

[4] The ninth cause of action, negligent infliction of emotional distress, rests on the negligence and negligent training and supervision claims, and because such claims are dismissed, the ninth cause of action is concurrently dismissed.  Further, Plaintiffs' Tenth Cause of Action, vicarious liability, is not a proper cause of action. *See, e.g., Beckwith v. Pool*, 2:13-CV-125 JCM NJK, 2013 WL 3049070, at *7 (D. Nev. June 17, 2013).  Vicarious liability as a basis for negligence is precluded by the discretionary act immunity provided for supervisory acts. *See Neal-Lomax*, 574 F. Supp. 2d at 1192.

of action are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiffs having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (quoting *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (1981)).

Here, Plaintiffs allege that "Defendants' actions in intentionally concealing the injuries sustained by Alexander and the circumstances surrounding his physical abuse were extreme and outrageous." (Am. Compl. ¶ 135). However, Plaintiffs again fail to allege facts sufficient to demonstrate that State Defendants specifically engaged in intentional acts to conceal Alexander's injuries or the circumstances regarding his injuries. Therefore, the Court dismisses Plaintiffs' twelfth cause of action against State Defendants.

### D.  Leave to Amend

The Federal Rules of Civil Procedure Rule 15(a)(2) allows courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Additionally, the Ninth Circuit held "that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

For the aforementioned reasons, the Court GRANTS the State Defendants' Motion to Dismiss. Of the eleven claims that the Court has granted the State Defendants' Motion to Dismiss, the Court finds that only two claims could not possibly be cured by the allegation of other facts. First, the Court finds that leave to amend Plaintiffs' claim asserting municipal liability would be futile. Second, the Court finds that leave to amend Plaintiffs' claim asserting vicarious liability would also be futile. Accordingly, these two claims are dismissed with

prejudice.

On the other hand, Plaintiffs' first, second, third, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action are dismissed without prejudice. Because the Court cannot find that amendment would be futile, the Court grants leave to file an amended complaint that cures the deficiencies identified in this Order. Plaintiffs shall file a second amended complaint by **Thursday, March 5, 2015**, if it can allege sufficient facts that cure the deficiencies identified in this Order. Failure to file a second amended complaint by this date shall result in the Court dismissing these claims against State Defendants with prejudice.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 54) filed by Defendants Amber Howell and Michael Willden is **GRANTED**. Plaintiffs' fourth cause of action, asserting municipal liability, and tenth cause of action, asserting vicarious liability, against State Defendants are dismissed with prejudice. Additionally, Plaintiffs' first, second, third, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action against State Defendants are **DISMISSED without prejudice, with leave to amend**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a second amended complaint by **Thursday, March 5, 2015**. Failure to file a second amended complaint by this date will result in **DISMISSAL** of Plaintiffs' first, second, third, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action against State Defendants Amber Howell and Michael Willden with prejudice.

**DATED** this 11th day of February, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge